# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RACHAEL BOSEMAN, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | NO.  15-2332 |
| UPPER PROVIDENCE TOWNSHIP and | : | |
| OFFICER PATRICK REYNOLDS, | : | |
| | : | |
| Defendants. | : | |

## <u>MEMORANDUM</u>

BUCKWALTER, S. J.                                                                January 26, 2016

Currently pending before the Court is the Motion to Dismiss and to Strike by Defendants

Upper Providence Township and Patrick Reynolds (collectively, "Defendants") pursuant to

Federal Rules of Civil Procedure 12(b)(6) and 12(f).  For the following reasons, the Motion to

Dismiss is granted in its entirety and the Motion to Strike is granted in part and denied in part.

## I.      FACTUAL BACKGROUND

Plaintiff Rachael Boseman ("Plaintiff") is a resident of Pennsylvania.  (Compl. ¶ 2.)

Defendant Upper Providence Township is a municipality in Delaware County, Pennsylvania that

owns, operates, manages, directs, and controls the Upper Providence Police Department, which

employs Defendant Patrick Reynolds as a police officer.  (<u>Id.</u> ¶ 3.)  Plaintiff is suing Defendant

Patrick Reynolds in his individual capacity.  (<u>Id.</u> ¶ 4.)

At the time of the incident described in the Complaint, Plaintiff was twenty-nine years

old, worked as a financial consultant, and did not have a criminal record.  (<u>Id.</u> ¶¶ 5–6.)  On April

11, 2014, Plaintiff left her place of employment in Chadds Ford, Pennsylvania, shortly before

9:00 p.m.  (Id. ¶ 6.)  After leaving her office, Plaintiff stopped at a Sunoco gas station across the street and conducted a transaction at 9:03 p.m.  (Id. ¶ 7.)  Plaintiff traveled approximately twelve miles north on Route 1, and at approximately 9:25 p.m., Defendant Reynolds initiated a traffic stop of Plaintiff in Upper Providence Township.  (Id. ¶ 8.)  Plaintiff alleges that even though she did not drink any alcohol that day and was not intoxicated as defined by 75 Pa. C.S. § 3802, Defendant Reynolds arrested her and charged her with driving under the influence in violation of 75 Pa. C.S. § 3802.  (Id. ¶  9.)

According to the Complaint, Defendant Reynolds prepared police paperwork to support the unlawful arrest by fabricating the actual facts of the encounter.  (Id. ¶ 10.)  Defendant Reynolds prepared police reports which stated that he "detected a strong odor of alcohol emanating from within the vehicle" and that Plaintiff had "glassy and blood-shot" eyes, as well as a "red face, blank stare and slurred speech."  (Id. ¶ 11.)  Defendant Reynolds also stated that Plaintiff failed the field sobriety tests and refused to take a blood test.  (Id. ¶ 12.)  Plaintiff denies all the facts in the police reports, but admits that she may have had a red face because she has a skin condition that gives her "a rosy complexion," especially when she is in a stressful situation.  (Id. ¶ 13 & n.1.)

After her arrest, Plaintiff was transported to the Upper Providence Police Department.  (Id. ¶ 14.)  Once there, Defendant Reynolds gave Plaintiff a document, known as "the O'Connell Warnings," which described Plaintiff's limited rights regarding the request for a blood test.  (Id.)  Before Plaintiff had an adequate opportunity to review the O'Connell Warnings, Defendant Reynolds took the document and declared that Plaintiff refused to take a blood test.  (Id. ¶ 15.)  Plaintiff then agreed to go to the hospital for a blood test, even though she was not permitted to read the O'Connell Warnings, but Defendant Reynolds refused and then "fabricated police

paperwork to state that Plaintiff had refused" the blood test.  (Id. ¶¶ 16–17.)  At Plaintiff's subsequent trial, Defendant Reynolds testified that he attempted to read the O'Connell Warnings to Plaintiff in the police car, a fact which Plaintiff denies.  (Id. ¶ 18.)  Based on Defendant Reynolds's allegations, which Plaintiff asserts are false, Plaintiff was arrested and charged with driving under the influence of alcohol.  (Id. ¶ 19.)  Plaintiff further denies any and all allegations which form the basis of probable cause to arrest her and pursue criminal charges against her, including all allegations in the police reports prepared by Defendant Reynolds and about which he testified at Plaintiff's trial.  (Id. ¶ 20.)

Plaintiff asserts that Defendant Reynolds provided false information and/or reports to the Delaware County District Attorney's Office regarding Plaintiff's conduct on the night of her arrest.  (Id. ¶ 21.)  Defendant Reynolds was the sole source of information upon which the District Attorney relied to make the charging decision.  (Id. ¶ 22.)  The District Attorney's Office elected to prosecute Plaintiff based on the information Defendant Reynolds provided, and he was the only inculpatory witness against Plaintiff at her criminal trial.  (Id. ¶ 23.)

Plaintiff's bail was set at $5,000/unsecured.  (Id. ¶ 24.)  Due to the arrest and conditions of bail, Plaintiff's ability to travel was restricted and she was required to appear in court on multiple occasions, including but not limited to August 12, 2014; January 5, 2015; February 2, 2015; February 3, 2015; February 4, 2015; and February 10, 2015.  (Id. ¶ 25.)  On or about February 3, 2014, Plaintiff formally rejected an offer for "ARD" and proceeded through a criminal trial.  (Id. ¶ 36.)  On or about February 10, 2014, Plaintiff was found not guilty of the charges against her.  (Id. ¶ 37.)  According to the Complaint, "PennDOT has already filed paperwork attempting to suspend Boseman's diving [sic] privileges for one year due to her alleged refusal to take a blood test."  (Id. ¶ 38.)

Plaintiff alleges that Defendant Reynolds "has a history of making boilerplate allegations against DUI suspects." (Id. ¶ 26.)  The Complaint lists twenty-one examples of other DUI arrests by Defendant Reynolds between November 22, 2006 and May 3, 2011 where the arrestee was described as having some combination of a strong odor of alcohol on breath and person, glassy eyes, slurred speech, bloodshot eyes, a "flush face," staggered gait, and using their vehicle to keep their balance.[1] (Id. ¶¶ 26a–v.)  The Complaint asserts that one individual was arrested based on an odor of alcohol on breath and person, glassy and bloodshot eyes, slurred speech, staggered gait, and reliance on the vehicle for balance, "even though he had dilated pupils that indicated drug use." (Id. ¶ 26i.)  The Complaint also notes that another individual, "despite being Hispanic, apparently had a flush face," and that two other individuals arrested for DUI were described as having flushed faces, in spite of being African-American and even though they were arrested in the early morning hours. (Id. ¶¶ 26o, 26t, 30.)  Plaintiff asserts that "[a]lmost all of the boilerplate police reports prepared by Defendant Reynolds contain nearly identical descriptions of each DUI suspect; to wit: a [strong] odor of alcohol; glassy, bloodshot eyes, flush face; and slurred speech" and that "the observations are similar without regard to the actual blood-alcohol contents of each driver." (Id. ¶¶ 27–28.)  Plaintiff notes that on more than one occasion, Defendant Reynolds referred to suspects as having "blood-shoot" eyes, rather than "bloodshot eyes." (Id. ¶ 29.)  According to the Complaint, "instead of generating new police reports with each arrest and including his individualized observations of each suspect, Defendant Reynolds was simply copying and pasting information from prior reports and thereby fabricating observations of those he arrested, including Plaintiff." (Id. ¶ 31.)  Two of the twenty-one individuals described in the Complaint later filed complaints against Defendant Reynolds and/or

---

[1] Though Plaintiff included the full names of each of those individuals in the Complaint, the Court has omitted them from the recitation of facts.

filed civil lawsuits against Defendant Reynolds and/or the Upper Providence Police Department. (Id. ¶¶ 26u, 26v.)

Fabrication of evidence is contrary to the written policies and procedures of the Upper Providence Township Police Department. (Id. ¶ 32.) According to the Complaint, the "rote recitation of the exact same symptoms, grammatical errors, and impossible allegations are indicative of lack of training, but more directly [are] evidence [of] a lack of supervision at the Upper Providence Police Department." (Id. ¶ 33.) "Thus, decision makers from the Upper Providence Police Department were aware of previous allegations against Defendant Reynolds; despite this knowledge, no steps were taken to correct this illegal conduct, thereby creating a culture within the department which encouraged, if not sanctioned, these types of illegal arrests." (Id. ¶ 34.) Plaintiff asserts that "[i]n the alternative, if no supervisors were somehow aware that Defendant Reynolds was fabricating evidence, then a culture and custom existed at the Upper Providence Police Department whereby officers could fabricate evidence and violated individual's constitutional rights." (Id. ¶ 35.)

Plaintiff initiated the present litigation by filing a Complaint on April 28, 2015. Defendants filed a Motion to Dismiss the Complaint and to Strike certain allegations on June 10, 2015. Plaintiff filed a Response in Opposition to the Motion to Dismiss on July 17, 2015. The Motion to Dismiss and to Strike is now ripe for judicial consideration.

## II. STANDARD OF REVIEW

Under Rule 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). In Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the United States Supreme Court recognized that "a plaintiff's obligation to provide

the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. at 555.  Following these basic dictates, the Supreme Court, in Ashcroft v. Iqbal, 556 U.S. 662 (2009), subsequently defined a two-pronged approach to a court's review of a motion to dismiss.  "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. at 678.  Thus, although "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  Id. at 678–79.

Second, the Supreme Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss."  Id. at 679.  "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id.  A complaint does not show an entitlement to relief when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.  Id.; see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232–34 (3d Cir. 2008) (holding that: (1) factual allegations of complaint must provide notice to defendant; (2) complaint must allege facts suggestive of the proscribed conduct; and (3) the complaint's "'factual allegations must be enough to raise a right to relief above the speculative level.'") (quoting Twombly, 550 U.S. at 555)).  "A complaint that pleads facts 'merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of entitlement to relief.'"  Connelly v. Lane Constr. Corp., No. 14-3792, 2016 WL 106159, at *3 (3d Cir. Jan. 11, 2016) (quoting Iqbal, 556 U.S. at 678 (citation

and internal quotation marks omitted)).

Notwithstanding these new dictates, the basic tenets of the Rule 12(b)(6) standard of review have remained static.  Spence v. Brownsville Area Sch. Dist., No. Civ.A.08-626, 2008 WL 2779079, at *2 (W.D. Pa. July 15, 2008).  The general rules of pleading still require only a short and plain statement of the claim showing that the pleader is entitled to relief and need not contain detailed factual allegations.  Phillips, 515 F.3d at 233.  Further, the court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff."  Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006).  Finally, the court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Pinkerton v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002).

## III.   DISCUSSION

Defendants move to dismiss Plaintiff's Complaint in its entirety for failure to state a claim under Rule 12(b)(6).  Having considered the Complaint and the parties' briefs, the Court finds that Plaintiff's claims against Defendant Reynolds and against Defendant Upper Providence Township fail as a matter of law and grants Defendants' Motion to Dismiss.  The Court also grants Defendants' Motion to Strike pursuant to Rule 12(f) with respect to Paragraphs Twenty-Six through Thirty-One.  The Motion to Strike is denied with respect to Paragraph Thirty-Two.

### A.   **Count One: Violation of Civil Rights**

In Count One, Plaintiff alleges that Defendant Reynolds violated "her constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution, including her right to a fair trial and due process of law, as well as the laws of the Commonwealth of Pennsylvania to be free from" the following:  (1) loss of physical liberty; (2) loss of property;

and (3) malicious prosecution.  (Compl. ¶ 40.)  Plaintiff asserts her claims in Count One pursuant to 42 U.S.C. § 1983.  (Id. ¶ 41.)

"Section 1983 provides a civil remedy for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws.'"  Halsey v. Pfeiffer, 750 F.3d 273, 290 (3d Cir. 2014) (quoting 42 U.S.C. § 1983.  "To state a claim under section 1983, a plaintiff must demonstrate that 'some person has deprived him of a federal right . . . [and] that the person who has deprived him of that right acted under color of state or territorial law.'"  Id. (quoting Gomez v. Toledo, 446 U.S. 635, 640 (1980)).

Based on Paragraph Forty of the Complaint, Plaintiff apparently desires to incorporate claims based on violations of Pennsylvania state law into her § 1983 claim.  As stated above, § 1983 provides a remedy for violations of federal laws by state actors, and therefore Plaintiff may not seek relief pursuant to her § 1983 claims on the basis of state laws.  Accordingly, the Court addresses Defendants' Motion to Dismiss Count One with respect to Plaintiff's § 1983 claims pursuant to her Fourth and Fourteenth Amendment rights, and analyzes her claims for loss of physical liberty, loss of property, and malicious prosecution in accordance with federal law, rather than Pennsylvania law.

## 1.  **Right to Fair Trial**

Plaintiff alleges that she was denied her right to a fair trial and suffered violations of her procedural due process rights.  Defendant Reynolds argues that Plaintiff's allegation that he lied in his paperwork to accomplish her arrest and prosecution "does not provide any facts that suggest that she was denied a right to a fair trial or that she was arrested without probable cause [and] [t]herefore there is no viable claim for a due process violation or a violation of the right to a fair trial."  (Defs.' Mem. Supp. Mot. Dismiss 20.)

Plaintiff's fair trial claim must fail as pled.  First, Plaintiff was actually acquitted at her criminal trial.  Second, Plaintiff does not support the conclusory allegation that she was denied a fair trial with facts sufficient to withstand a motion to dismiss.  See, e.g., Connelly, 2016 WL 106159 at *4 (noting that "[u]nder the pleading regime established by Twombly and Iqbal, a court reviewing the sufficiency of a complaint . . . should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'") (quoting Iqbal, 556 U.S. at 679).  Accordingly, Plaintiff has failed to support her claim that she was denied a fair trial, and Defendants' Motion to Dismiss that aspect of Count One is granted.

### 2.  **Due Process**

With respect to Plaintiff's due process claim, Defendants point out that Plaintiff does not indicate in the Complaint whether she is claiming a violation of her substantive due process rights or her procedural due process rights.  (Defs.' Mem. Supp. Mot. Dismiss 18.)  Plaintiff, however, clarifies that she "is not raising a substantive due process claim."  (Pl.'s Resp. Opp'n Mot. Dismiss 16.)  Accordingly, the Court will address Plaintiff's due process claim using the appropriate standards and case law for procedural due process.

"'To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'"  Mulholland v. Gov't Cty. of Berks, Pa., 706 F.3d 227, 238 (3d Cir. 2013) (quoting Hill v. Borough of Kutztown, 455 F.3d 225, 233–34 (3d Cir. 2006)).

Plaintiff asserts that her Fourteenth Amendment due process claim is based on Defendant Reynolds' fabrication of evidence,[2] and relies on the Third Circuit's decision in Halsey v. Pfeiffer in support of her argument that she may bring a stand-alone due process claim on that basis.  (Pl.'s Resp. Opp'n Mot. Dismiss 26 (citing Halsey, 750 F.3d 273 (3d Cir. 2014)).) Defendants argue that Halsey does not apply to Plaintiff's case, both because she was not convicted at her state criminal trial and because the Third Circuit particularly noted the distinction between disputed testimony and fabricated testimony.  (Defs.' Mem. Supp. Mot. Dismiss 19–20.)

In Halsey, the Third Circuit held "that if a defendant has been *convicted* at a trial at which the prosecution has used fabricated evidence, the defendant has a stand-alone claim under section 1983 based on the Fourteenth Amendment if there is a reasonable likelihood that, without the use of that evidence, the defendant would not have been convicted."  Halsey, 750 F.3d at 294 (emphasis added).  The Third Circuit noted that, "[i]n reaching our result, we hasten to add that courts in this Circuit should not permit a criminal defendant who later brings a civil action against state actors who had been involved in his prosecution to use this opinion beyond the scope of our holding."  Halsey, 750 F.3d at 295.  The Third Circuit further noted that "testimony that is incorrect or simply disputed should not be treated as fabricated merely because it turns out to have been wrong."  Id.  Thus, "Halsey stands for the principle that a procedural due process claim exists if there is a reasonable likelihood that fabricated evidence led to an individual's

---

[2] Plaintiff has alleged that Defendant Reynolds prepared arrest paperwork containing fabrications of probable cause, allegations which are distinct from an allegation that trial evidence was fabricated.  See Washington v. Hanshaw, 552 F. App'x 169, 173–74 (3d Cir. 2014) (finding that the plaintiff had not adequately stated a substantive due process claim where, "even viewing the facts in the light most favorable to [plaintiff], . . . [he] has not alleged that the police fabricated evidence of his guilt.  Rather, his claim asserts only that the police fabricated evidence to establish probable cause for his arrest.")  Even if Plaintiff had sufficiently alleged that Defendant Reynolds fabricated evidence, however, for the reasons discussed below, Halsey does not apply to Plaintiff's claims.

conviction." Black v. Montgomery Cty., No. Civ.A.14-6702, 2015 WL 5568388, at *4 (E.D. Pa. Sept. 21, 2015). Stated differently, "[a] defendant *convicted* at trial where the prosecution has used fabricated evidence has a claim under section 1983 based on the Fourteenth Amendment, if there is a reasonable likelihood that, without the use of that evidence, the defendant would not have been *convicted*." Andrews v. Scuilli, No. Civ.A.13-1657, 2015 WL 5732101, at *8 (W.D. Pa. Sept. 30, 2015) (emphasis in original) (citing Halsey, 750 F.3d at 294).

Several courts within the Third Circuit have found that Halsey does not permit a § 1983 plaintiff who was not convicted to assert a Fourteenth Amendment due process claim on the basis of allegations of fabricated evidence. See, e.g., Black, 2015 WL 5568388, at *4 (granting motion to dismiss and stating that "[i]t is evident from Halsey that [the plaintiff] cannot succeed on her Fourteenth Amendment fabricated evidence claims because she was not convicted at trial. There is no need to wait until summary judgment to reach this conclusion—the fabricated evidence could not have affected the outcome of Black's criminal case because she was found not guilty."); Andrews, 2015 WL 5732101, at *8 (finding that "this particular cause of action requires the criminal defendant to have been convicted at trial—the Third Circuit uses the term twice in its holding. Additionally, the Third Circuit explicitly cautioned against extending the holding beyond its intended scope . . . Thus, this Court declines to extend the Third Circuit's holding in Halsey to a situation where a criminal defendant was acquitted on all charges, as Plaintiff was here."). In accordance with the above interpretations of Halsey, the Court finds that Halsey's holding allowing for a stand-alone due process claim in certain circumstances does not apply to Plaintiff's case because she was not convicted at her state criminal trial.

Moreover, in setting forth her procedural due process claim, Plaintiff has not alleged what form of process she was due, but which she was denied. See Iqbal, 556 U.S. at 678

("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); see also Washington v. Hanshaw, 552 F. App'x 169, 174 (3d Cir. 2014) (affirming grant of judgment on the pleadings and observing that "[a]lthough procedural due process may be a proper basis for a § 1983 claim, [plaintiff's] brief merely recites the elements of a procedural due process claim without explaining what process he was owed and how that process was denied.  Thus, he has failed to carry his burden of demonstrating that Defendant's conduct deprived him of any constitutionally-protected procedural due process right.") (citation omitted).  Here, not only has Plaintiff failed to support her procedural due process claim with sufficient factual allegations, she has not even set forth the basic elements of such a claim.  For that additional reason, her procedural due process claim is insufficient and must be dismissed.

### 3.  Loss of Physical Liberty

"The Fourth Amendment forbids a state from detaining an individual unless the state actor reasonably believes that the individual has committed a crime—that is, the Fourth Amendment forbids a detention without probable cause."  Halsey, 750 F.3d at 291 (citing Bailey v. United States, ––– U.S. ––––, 133 S. Ct. 1031, 1037 (2013)).  "But this protection against unlawful seizures extends only until trial."  Halsey, 750 F.3d at 291 (citing Schneyder v. Smith, 653 F.3d 313, 321 (3d Cir. 2011) (observing that post-conviction incarceration does not implicate the Fourth Amendment)).  "The guarantee of due process of law, by contrast, is not so limited as it protects defendants during an entire criminal proceeding through and after trial."  Halsey, 750 F.3d at 291 (citing Pierce v. Gilchrist, 359 F.3d 1279, 1285–86 (10th Cir. 2004) ("The initial seizure is governed by the Fourth Amendment, but at some point after arrest, and

certainly by the time of trial, constitutional analysis shifts to the Due Process Clause.") (internal citation omitted)).

Based on the wording of Count One, it appears that Plaintiff wishes to assert a Fourth Amendment claim based on a loss of physical liberty that is distinct from that aspect of a federal malicious prosecution claim.  Plaintiff has not supplied any authority to show that she may bring a stand-alone claim on this basis.  In addition, and as discussed more thoroughly below, Plaintiff cannot establish that she suffered a deprivation of liberty that rises to the level of a Fourth Amendment seizure, and therefore this claim must fail.  See Washington, 552 F. App'x at 174 (finding that the plaintiff's claim for "deprivation of right to liberty" lacked merit, and that the court was not aware of any case of any court recognizing such a cause of action, and granting judgment on the pleadings on that claim to the defendants).  For both of these reasons, Defendants' Motion to Dismiss this aspect of Count One is granted.

### 4.  Loss of Property

Defendants do not specifically address this claim in their argument for dismissal of Count One, but because it is identified in Defendants' proposed order as one of the claims that should be dismissed against Defendant Reynolds, the Court will discuss its merits.  (See Defs.' Mot. Dismiss, Proposed Order.)  In the Complaint, Plaintiff does not allege what property she lost because of Defendant Reynolds.  Likewise, in her Response to Defendant's Motion to Dismiss, Plaintiff neither addresses the Count One loss of property claim, nor identifies what property she lost.  The only reference to Plaintiff's property appears in a section about the deprivation of liberty claim, and concerns the unsecured bail "which she would be forced to pay if she did not appear at any of her scheduled court dates."  (Pl.'s Resp. Opp'n Mot. Dismiss 7.)  Thus, as Plaintiff has not alleged what property, if any, Defendant Reynolds caused her to lose,

Defendants' Motion to Dismiss is granted with respect to the "Loss of Property" claim in Count One.

 5.  **Malicious Prosecution**

 As stated above, Plaintiff asserts a federal malicious prosecution claim against Defendant Reynolds pursuant to 42 U.S.C. § 1983.  Defendants argue that Plaintiff cannot establish the elements of a federal malicious prosecution claim, as she merely asserts that Defendant Reynolds's version of events on the night of her arrest was fabricated, and that her version is the correct one.  (Defs.' Mem. Supp. Mot. Dismiss 4–8.)

 "To prevail on a Fourth Amendment malicious prosecution claim under section 1983, a plaintiff must establish that: (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in [the plaintiff's] favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." Halsey v. Pfeiffer, 750 F.3d 273, 296–97 (3d Cir. 2014) (citing Johnson v. Knorr, 477 F.3d 75, 82 (3d Cir. 2007); Rose v. Bartle, 871 F.2d 331, 349 (3d Cir. 1989)); see also Estate of Smith v. Marasco, 318 F.3d 497, 521 (3d Cir. 2003).

 Plaintiff was acquitted of the charges in her criminal court proceeding, and has therefore established the second element of a malicious prosecution claim.  Accordingly, the Court need only discuss the first, third, fourth, and fifth elements of a Fourth Amendment malicious prosecution claim in addressing Defendants' Motion to Dismiss.

 a.  **Initiation of Criminal Proceeding**

 "'In most circumstances, a plaintiff cannot proceed against a police officer for a claim of malicious prosecution because a prosecutor, not a police officer, 'initiates' criminal proceedings

against an individual.'" <u>Stango v. Rodden</u>, No. Civ.A.00-5709, 2001 WL 1175131, at *4 (E.D.

Pa. Aug. 21, 2001) (citing <u>Harris v. City of Phila.</u>, No. Civ.A.97-3666, 1998 U.S. Dist. LEXIS

12640, at *13 (E.D. Pa. Aug. 14, 1998) (citing <u>Albright v. Oliver</u>, 510 U.S. 266, 279 n.5 (1994)

(Ginsburg, J., concurring)); <u>accord</u> <u>Reed v. City of Chicago</u>, 77 F.3d 1049, 1053 (7th Cir.

1996))).  "'However, a police officer may be held to have 'initiated' a criminal proceeding if he

knowingly provided false information to the prosecutor or otherwise interfered with the

prosecutor's informed discretion, [because] . . . [i]n such cases, an intelligent exercise of the . . .

[prosecutor's] discretion becomes impossible, and a prosecution based on the false information is

deemed procured by the person giving the false information.'" <u>Id.</u> (citations omitted).

Defendant Reynolds argues that Plaintiff's assertions that he fabricated information in the

police report are inadequate to support a claim that Defendant Reynolds (1) initiated the criminal

proceeding without probable cause; (2) failed to disclose exculpatory evidence to prosecutors;

(3) made false or misleading reports to the prosecutor; (4) omitted material information from the

reports; or (5) otherwise interfered with the prosecutor's ability to exercise independent

judgment in deciding whether to prosecute.[3]  (Defs.' Mem. Supp. Mot. Dismiss 7 (citing <u>Telepo</u>

<u>v. Palmer Twp.</u>, 40 F. Supp. 2d 596, 610 (E.D. Pa. 1999)).)  Plaintiff responds that the Complaint

properly pleads a malicious prosecution case against Defendant Reynolds because it "alleges that

---

[3] Defendant Reynolds also asserts that Plaintiff's malicious prosecution claim must be
dismissed because on August 14, 2014, she, while personally present and represented by counsel,
waived her Preliminary Hearing, and that only then did the Commonwealth of Pennsylvania file
the criminal information.  (Defs.' Mem. Supp. Mot. Dismiss 4 (citing Ex. B, Criminal Docket for
Rachael D. Boseman).)  Defendant Reynolds argues that, because "no testimony was taken at the
Preliminary Hearing, and Plaintiff did not challenge that there was a prima facie case of probable
cause sufficient for the case to move forward for trial, and indeed conceded such, no claim for
malicious prosecution may proceed against the arresting Officer."  (Defs.' Mem. Supp. Mot.
Dismiss 5.)  In support of that argument, Defendant relies on case law from outside this circuit,
as well as a case from the Middle District of Pennsylvania which considered a claim based on
slightly different facts.  (<u>See</u> <u>id.</u>)  Because Plaintiff's federal law malicious prosecution claim is
being dismissed on other grounds, the Court need not address this argument.

[he] provided false information to the prosecutor and withheld exculpatory information regarding Plaintiff's sobriety."  (Pl.'s Resp. Opp'n Mot. Dismiss 9.)

Plaintiff asserts that (1) Defendant Reynolds provided false information and/or reports to the Delaware County District Attorney's Office regarding Plaintiff's conduct on the night of her arrest; (2) Defendant Reynolds was the sole source of information upon which the District Attorney relied to make the charging decision; and (3) the district attorney's office elected to prosecute Plaintiff based on the information Defendant Reynolds provided, and he was the only inculpatory witness against Plaintiff at her criminal trial.  (Compl. ¶¶ 21–23.)  These allegations are conclusory.  First, Plaintiff does not identify what information or which reports are alleged to be false or fabricated, aside from her general assertion that Defendant Reynolds fabricated probable cause for her arrest and lied about Plaintiff refusing to take a blood test following her arrest.[4]  Second, Plaintiff does not point to any factual averments for her contention that the only source of information the prosecutor relied on in the charging decision was Defendant Reynolds. Third, the fact that Defendant Reynolds was the only inculpatory witness who testified at Plaintiff's trial does not mean that he was actually the only person who provided information that led to the decision to prosecute Plaintiff.  Plaintiff argues in her Response that Defendant Reynolds withheld exculpatory information, but she does not identify what, if any, exculpatory information was withheld.  Plaintiff's bare bones allegations are therefore insufficient to establish that Defendant Reynolds initiated the criminal proceeding against her for purposes of the first element of a malicious prosecution claim.

---

[4] As discussed below, the Court finds that Plaintiff's conclusory allegations that Defendant Reynolds lacked probable cause to arrest her are insufficient to support her claim of malicious prosecution.

### b. **Probable Cause**

"Probable cause exists when 'the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed.'" Stetser v. Jinks, 572 F. App'x 85, 87 (quoting United States v. Cruz, 910 F.2d 1072, 1076 (3d Cir. 1990) (citing Dunaway v. New York, 442 U.S. 200, 208 n.9 (1979)). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." Devenpeck v. Alford, 543 U.S. 146, 152 (2004) (citing Maryland v. Pringle, 540 U.S. 366, 371 (2003)). Where an officer has established probable cause, he is "not required to undertake an exhaustive investigation in order to validate the probable cause that, in his mind, already existed." Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 790 (3d Cir. 2000) (citation omitted); see also Davis v. Malitzki, 451 F. App'x 228, 233 (3d Cir. 2011) ("[E]vidence that might exonerate a defendant does not defeat probable cause."). "While 'the probable-cause standard is incapable of precise definition or quantification,' all interpretations of probable cause require a belief of guilt that is reasonable, as opposed to certain." Halsey, 750 F.3d at 299 (quoting Wright v. City of Phila., 409 F.3d 595, 602 (3d Cir. 2005) (additional internal citations and quotations omitted)). Stated differently, "'[t]he evidentiary standard for probable cause is significantly lower than the standard which is required for conviction.'" Id. (quoting Wright, 409 F.3d at 602). "It is therefore irrelevant in a probable cause inquiry 'whether a person is later acquitted of the crime for which she or he was arrested.'" Id. (quoting Wright, 409 F.3d at 602).

According to the Complaint, the police report stated the following: (1) prior to arresting Plaintiff, Defendant Reynolds detected an odor of alcohol coming from within Plaintiff's car; (2) Plaintiff had glassy and blood-shot eyes, a red face, blank stare, and slurred speech; and (3)

Plaintiff failed the field sobriety test.  (Compl. ¶¶ 11–12.)  Plaintiff admits that she may have had

a red face, but attributes it to a skin condition, and denies all other facts in the police report.  (Id.

¶ 13 & n.1.)  Plaintiff's denial of the facts supporting Defendant Reynolds's description of

probable cause to arrest her, as well as disputing his version of the facts surrounding the blood

test warnings and whether Plaintiff refused a blood test, is not equivalent to an assertion of facts,

which, if true, show that probable cause was lacking.  It cannot be the case that a plaintiff's bald

assertion denying the existence of probable cause, without more, is the only allegation required

to negate probable cause for purposes of a malicious prosecution claim.  The fact that Plaintiff

offers an alternative reason for possibly having had a red face when Defendant Reynolds effected

a traffic stop is also not enough to negate Defendant Reynolds's reliance on that factor as part of

his probable cause calculus.  Plaintiff does not indicate whether she informed Defendant

Reynolds of her skin condition at the time she was pulled over.  Even if she had, as noted above,

once an officer has established probable cause, he is "not required to undertake an exhaustive

investigation in order to validate the probable cause that, in his mind, already existed."  Merkle,

211 F.3d at 790 (citation omitted); see also Davis, 451 F. App'x at 233 ("[E]vidence that might

exonerate a defendant does not defeat probable cause.").  Rather, for probable cause "the proper

inquiry is whether 'the facts and circumstances *within the arresting officer's knowledge*' were

sufficient to warrant a reasonable belief that the offense was committed."  Livingston v.

Allegheny Cty., 400 F. App'x 659, 665 (3d Cir. 2010) (quoting Merkle, 211 F.3d at 788).  In

Plaintiff's case, that would include Defendant Reynolds's other observations of Plaintiff's

appearance, the odor of alcohol from her car, and the failed field sobriety test.  Thus, on the basis

of the largely conclusory allegations in the Complaint, Plaintiff has failed to sufficiently support

the probable cause element of her malicious prosecution claim.

Plaintiff also sets forth the conclusory allegation that Defendant Reynolds "has a history of making boilerplate allegations against DUI suspects." (Compl. ¶ 26.)[5] Plaintiff apparently bases this assertion on the twenty-one examples of other DUI arrests by Defendant Reynolds between November 22, 2006 and May 3, 2011, where the arrestee was described as having some combination of characteristics, including a strong odor of alcohol on breath and person, glassy eyes, slurred speech, bloodshot eyes, a "flush face," staggered gait, and using their vehicle to keep their balance. (Id. ¶¶ 26a–v.) Plaintiff further asserts that "[a]lmost all of the boilerplate police reports prepared by Defendant Reynolds contain nearly identical descriptions of each DUI suspect; to wit: a [strong] odor of alcohol; glassy, bloodshot eyes, flush face; and slurred speech" and that "the observations are similar without regard to the actual blood-alcohol contents of each driver." (Id. ¶¶ 27–28.) Contrary to Plaintiff's conclusions, however, the fact that some of the descriptors Defendant Reynolds used with respect to Plaintiff were also used with other people arrested for DUI does not mean that Defendant Reynolds fabricated probable cause in Plaintiff's case. It is simply indicative of the fact that there are a finite number of physical attributes or behaviors that describe someone under the influence of alcohol. That the observations are similar "without regard to the actual blood-alcohol contents of each driver" does not support Plaintiff's assertion that probable cause was fabricated in her case, because individuals experiencing varying degrees of drunkenness could nonetheless exhibit similar symptoms of being drunk.

Plaintiff also notes that Defendant Reynolds sometimes refers to suspects as having "blood-shoot" eyes, rather than "bloodshot eyes." (Id. ¶ 29.) According to the Complaint, "instead of generating new police reports with each arrest and including his individualized

---

[5] As discussed more thoroughly below, Paragraph Twenty-Six is being stricken from the Complaint. The Court nonetheless addresses the allegations therein in the context of Plaintiff's probable cause argument.

observations of each suspect, Defendant Reynolds was simply copying and pasting information from prior reports and thereby fabricating observations of those he arrested, including Plaintiff." (Id. ¶ 31.)  Even if it is true that Defendant Reynolds made spelling errors and/or copied and pasted phrases from other police reports when preparing a new one, the mere use of word processing tools or a careless failure to proofread does not support Plaintiff's assertions that Defendant Reynolds did not have probable cause to arrest her based on what he observed at the scene of her traffic stop and arrest.

Finally, Plaintiff asserts that one individual described in Paragraph Twenty-Six was arrested based on an odor of alcohol on breath and person, glassy and bloodshot eyes, slurred speech, staggered gait, and reliance on the vehicle for balance, "even though he had dilated pupils that indicated drug use." (Id. ¶ 26i.)  The Complaint also notes that another individual, "despite being Hispanic, apparently had a flush face," and that two other individuals arrested for DUI were described as having flushed faces, in spite of being African-American and even though they were arrested in the early morning hours. (Id. ¶¶ 26o, 26t, 30.)  These facts do not support Plaintiff's claim that Defendant Reynolds fabricated probable cause to arrest her.  First, it is entirely possible that an individual could use alcohol and drugs on the same occasion, thus displaying symptoms of impairment due to both types of substances.  Second, it could be possible for an African-American or Latino individual, or an individual of any ethnic background, to have a flushed face, depending on the skin tone of that particular individual.  Third, the fact that someone is arrested during early morning hours when it is still dark out does not mean that Defendant Reynolds could not have relied on a flashlight, the headlights from his own vehicle, or the interior lights of the car that had been pulled over in order to observe the appearance of the driver.  Simply put, those facts do not support Plaintiff's allegations that

Defendant Reynolds fabricated probable cause in those cases, or that he fabricated probable cause in Plaintiff's case.

In light of the above, Plaintiff's allegations do not support her claim that Defendant Reynolds lacked probable cause to arrest her. Accordingly, the Court finds that Plaintiff has failed to establish the third element of a malicious prosecution claim.

### c. Malicious Action or Action for a Purpose Other Than Justice

The parties did not specifically address this element in their arguments. As discussed above and below, however, Plaintiff's Fourth Amendment malicious prosecution claim fails for several reasons, and thus the Court need not address this element in order to rule on Defendants' Motion to Dismiss.

### d. Deprivation of Liberty

Defendants next argue that, because Plaintiff's Complaint does not allege that she was subject to pretrial custody or that she had to post bail, she cannot show that she suffered a "restriction upon liberty." (Defs.' Mem. Supp. Mot. Dismiss 7.) Defendants maintain that Plaintiff's allegations that her "travel was restricted" and that she had to attend pre-trial hearings are insufficient to establish deprivation of liberty. (Id.) Plaintiff maintains that "her liberty interest was curtailed" based on the following facts: (1) she was pulled over for no legitimate reason and subsequently handcuffed, arrested, and transported to the police station against her will; (2) she was forced to appear in court with the threat of a $5,000 bond which she would be forced to pay if she did not appear at any of her scheduled court dates; (3) following her arrest, she was required to submit to fingerprints and photographing by the police department; and (4) "Plaintiff was arrested on April 11, 2015[6] and her case was not resolved until February 10,

---

[6] The correct date of Plaintiff's arrest, according to the Complaint, is April 11, 2014.

2015." (Pl.'s Resp. Opp'n Mot. Dismiss 7.)  Both parties cite Gallo v. City of Philadelphia, 161 F.3d 217 (3d Cir. 1998) in support of their arguments.

In Gallo, the plaintiff was arraigned and released on a $10,000 personal recognizance bond, but was never arrested, detained, or handcuffed; as a condition of his release, he was prohibited from traveling outside of New Jersey and Pennsylvania; and he was required to contact pretrial services on a weekly basis.  See Gallo v. City of Phila., 161 F.3d 217, 219 (3d Cir. 1998), as amended (Dec. 7, 1998).  Those restrictions remained in effect for a period of eight months, from the time of his arraignment until his trial.  Id.  The Third Circuit stated that, "[a]lthough it is a close question, we agree with Gallo that these restrictions amounted to a seizure" for purposes of a Fourth Amendment malicious prosecution claim.  Id. at 222; see also id. at 225 ("We conclude that the combination of restrictions imposed upon Gallo, because they intentionally limited his liberty, constituted a seizure.").

Subsequently, the Third Circuit stated that "[i]f Gallo was a 'close question,'" there was "no seizure significant enough to constitute a Fourth Amendment violation in support of a Section 1983 malicious prosecution action" in a case where the plaintiffs "were only issued a summons; they were never arrested; they never posted bail; they were free to travel; and they did not have to report to Pretrial Services."  DiBella v. Borough of Beachwood, 407 F.3d 599, 603 (3d Cir. 2005).  There, the Third Circuit held that "[p]retrial custody and some onerous types of pretrial, non-custodial restrictions constitute a Fourth Amendment seizure" but that attendance at trial did not constitute a Fourth Amendment "seizure" for purposes of a malicious prosecution claim.  Id.  More recently, the Third Circuit further clarified its position, stating that "[w]hen the state places constitutionally significant restrictions on a person's freedom of movement for the purpose of obtaining his presence at a judicial proceeding, that person has been seized within the

meaning of the Fourth Amendment." Schneyder v. Smith, 653 F.3d 313, 321–22 (3d Cir. 2011); see also id. at n.12 ("We hold open the possibility that some conditions on pre-trial release may be so insignificant as not to implicate constitutionally protected liberty interests.") (citing Kingsland v. City of Miami, 382 F.3d 1220, 1236 (11th Cir. 2004), which "conclude[ed] that conditions of release not amounting to a 'significant deprivation of liberty' did not implicate the Fourth Amendment")).

Numerous courts in this district have found that, absent "onerous" pretrial, non-custodial restrictions, a seizure has not occurred for purposes of a malicious prosecution claim. See, e.g., Black v. Montgomery Cty., No. Civ.A.14-6702, 2015 WL 5568388, at *3 (E.D. Pa. Sept. 21, 2015) (granting motion to dismiss where plaintiff was never arrested or placed in custody, released on $50,000 unsecured bail, and required to appear at the police station for photographing and fingerprinting, required to appear at pre-trial conferences, hearings, and trial listings, and had no reporting requirements and was free to travel); Roberts v. Caesars Entm't, Inc., 72 F. Supp. 3d 575, 582 (E.D. Pa. 2014) (dismissing malicious prosecution claim where plaintiffs were not held in pre-trial custody, had to seek permission to travel but where travel was not restricted, and where no other limitations on freedom were placed); Lopez v. Maczko, No. Civ.A.07-1382, 2007 WL 2461709, at *4 (E.D. Pa. Aug. 16, 2007) (dismissing malicious prosecution claim where the plaintiff was required to post $10,000 bail, attend proceedings related to the charges, and communicate with pretrial services, but did not have any travel restraints and the criminal proceedings following the charges being filed did not include a trial); Ankele v. Hambrick, 286 F. Supp. 2d 485, 497 (E.D. Pa. 2003) aff'd, 136 F. App'x 551 (3d Cir. 2005) (granting summary judgment on malicious prosecution claim to defendant where plaintiff was in custody for thirty to forty-five minutes at a state police barracks, attended a preliminary

23

hearing, license suspension appeal, and criminal trial, and posted a $2,000 unsecured bond, but was never incarcerated, restricted to a geographic area, or deprived of his driver's license).

Here, Plaintiff was not subject to the type of "onerous" pre-trial conditions that rise to the level of a deprivation of liberty constituting a Fourth Amendment seizure.  There are no specific allegations in the Complaint that Plaintiff's travel was restricted by a court,[7] or that she was subject to pre-trial restrictions during the ten months between her arrest and her acquittal.  The Complaint alleges only that she was transported to the police station after her arrest, after which time she was released; that she was not actually required to post a bond; and that she was fingerprinted and photographed.  Even if inconvenient, none of those conditions was "onerous." Accordingly, Plaintiff did not suffer a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding, and she has therefore failed to establish the fifth element of a Fourth Amendment malicious prosecution claim.

### e.   <u>Conclusion as to Plaintiff's Malicious Prosecution Claim</u>

As discussed above, Plaintiff has failed to state a claim for malicious prosecution because she has not established three of the five required elements of such a claim: that Defendant Reynolds initiated the criminal proceeding against her, that he lacked probable cause to arrest her, or that Plaintiff suffered a deprivation of liberty.  Accordingly, Defendants' Motion to Dismiss Count One is granted with respect to Plaintiff's malicious prosecution claim.

---

[7] Plaintiff alleged that her "ability" to travel was restricted due to the arrest and conditions of bail.  (Compl. ¶ 25.)  Nothing in the Complaint indicates that Plaintiff's travel was outright restricted by a court.  Even if Plaintiff was required to arrange any travel around her court dates in order to avoid posting the unsecured bond for missing any of those dates, that would not be the sort of "onerous" restriction at issue in <u>Gallo</u>.

**B.  Count Two: Deliberate Indifference and Failure to Train**

Plaintiff sets forth two categories of municipal liability claims, alleging that Defendant

Upper Providence Township "encouraged, tolerated, ratified, and has been deliberately

indifferent to": (1) patterns, practices, and customs regarding various aspects of policing, which

led to the deprivation of Plaintiff's constitutional rights; and (2) the need for more or different

training, supervision, investigation, or discipline in various areas of policing, which led to the

deprivation of Plaintiff's constitutional rights.  (Compl. ¶ 43.)  Plaintiff makes these allegations

in connection with the following areas:

> (1)  Unlawful detentions and unlawful arrests by police officers;
> (2)  The proper exercise of police powers, including but not limited to fabrication of evidence, unlawful arrest, and malicious prosecution;
> (3)  The failure to identify and take remedial or disciplinary action against police officers who were the subject of prior civilian or internal complaints of misconduct;
> (4)  Police officers' use of their status as police officers to employ the use of unlawful arrest, or to achieve ends not reasonably related to their police duties;
> (5)  Police officers' use of their status as police officers to employ the use of unlawful arrest, invoke the Code of Silence, or to achieve ends not reasonably related to police duties;
> (6)  The failure of police officers to follow established policies, procedures, directives and instructions regarding the use of arrest powers under such circumstances as presented in this case;
> (7)  The refusal of police officers to intervene when other officers violate the rights of citizens in their presence; []
> (8)  Systemic review of police paperwork to ensure proper procedures are followed; [and]
> (9)  The refusal of police officers to report or provide information concerning the misconduct of other police officers, a custom or practice known as the "Code of Silence."

(Id. ¶ 43.)

Plaintiff further alleges that "Defendant Upper Providence Township failed to properly

sanction or discipline officers, who are aware of and conceal and/or aid and abet violations of

constitutional rights of individuals by other Upper Providence Police Officers, thereby causing

and encouraging Upper Providence police, including the defendant officers in this case, to

violate the rights of citizens such as plaintiffs."  (Id. ¶ 44.)  According to the Complaint,

"Defendant Upper Providence Township is deliberately indifferent to the need to train, supervise

and discipline police officers.  The Upper Providence Police Department, or its investigating

body, fails to provide an internal disciplinary mechanism that imposes meaningful disciplinary

and remedial actions."  (Id. ¶ 45.)  Plaintiff claims that Defendant Upper Providence Township,

"as a matter of policy or practice," demonstrated deliberate indifference to the rights of its

citizens, including Plaintiff, by its failure to:

> (1) Adequately hire, discipline, train, supervise and/or otherwise
>     direct its employees, including Defendants in this case,
>     concerning the rights of its citizens;
> (2) Establish a system which properly identifies, reports and/or
>     investigates instances of improper conduct by its employees,
>     including Defendants in this case; and
> (3) Adequately sanction and/or discipline its employees, including
>     Defendants in this case, for violations of the rights of citizens;

"hereby causing Defendants, in this case, to engage in the unlawful conduct described" in the

Complaint.[8]  (Id. ¶ 46.)

Plaintiff asserts that Defendant Upper Providence Township "has deprived Plaintiff of his

[sic] rights secured by the United States Constitution," specifically the Fourth and Fourteenth

Amendments, in violation of 42 U.S.C. § 1983, and that its conduct is not protected by

Pennsylvania's Political Subdivision Tort Claims Act because "it is a crime, actual fraud, actual

malice[,] or willful misconduct."  (Id. ¶¶ 46, 47–48.)

---

[8] Only Defendant Reynolds has been named as an individual defendant in this lawsuit,
and Plaintiff is the only plaintiff in this case.  It is unclear why Plaintiff refers to multiple
individual defendants and multiple plaintiffs in these paragraphs.

"[F]or there to be municipal liability, there [ ] must be a violation of the plaintiff's constitutional rights." Brown v. Commonwealth of Pa., Dep't of Health Emergency Med. Servs. Training Inst., 318 F.3d 473, 482 (3d Cir. 2003); see also City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point.")  As discussed above, Plaintiff failed to sufficiently allege that Defendant Reynolds violated her Fourth or Fourteenth Amendment rights.  Plaintiff, therefore, cannot succeed on her § 1983 municipal liability claims against Defendant Upper Providence Township. See, e.g., Black, 2015 WL 5568388, at *5 (granting motion to dismiss § 1983 municipal liability claims by municipal defendants where plaintiff failed to sufficiently allege constitutional violations by the individual defendants).   Thus, Defendants' Motion to Dismiss Count Two is granted.

### C. **Count Three: Malicious Prosecution**

In Count Three, Plaintiff alleges that Defendant Reynolds violated her rights under Pennsylvania law when he intentionally, recklessly, and maliciously caused a criminal prosecution to be initiated against her without probable cause.  (Compl. ¶ 50.)  Plaintiff asserts that after she was arrested, she "had to endure the prospect of going to trial in order to prove her innocence," and that "Defendants acted with malice and furthered the prosecution of Plaintiff by providing false information, and/or withheld truthful information, all of which if known would have resulted in no prosecution of Plaintiff."  (Id. ¶ 51.)  Plaintiff was acquitted on all of the criminal charges against her.  (Id. ¶ 52.)  As a result of Defendant Reynolds's conduct, Plaintiff alleges that she "suffered physical injury and pain, and continues to suffer emotional distress, humiliation, mental pain and anguish . . . ."  (Id. ¶ 53.)

Under Pennsylvania law, "[a] cause of action for malicious prosecution has three elements. The defendant must have instituted proceedings against the plaintiff 1) without probable cause, 2) with malice, and 3) the proceedings must have terminated in favor of the plaintiff." Kelley v. Gen. Teamsters, Chauffeurs & Helpers, Local Union 249, 544 A.2d 940, 941 (Pa. 1988) (citing Miller v. Pa. R.R. Co., 89 A.2d 809, 811 (Pa. 1952)). "Malice may be inferred from the absence of probable cause." Id. (citing Hugee v. Pa. R.R. Co., 101 A.2d 740, 743 (Pa. 1954)). "Usually, the existence of probable cause is a question of law for the court rather than a jury question, but may be submitted to the jury when facts material to the issue of probable cause are in controversy." Id. "Probable cause is defined as 'a reasonable ground of suspicion supported by circumstances sufficient to warrant an ordinary prudent man in the same situation in believing that the party is guilty of the offense.'" Id. (quoting Miller, 89 A.2d at 811–12 .

As discussed above in connection with Plaintiff's federal law malicious prosecution claim, Plaintiff sets forth conclusory allegations which do not adequately support her assertion that Defendant Reynolds lacked probable cause to arrest her. For the same reasons discussed above in connection with Count One, Plaintiff has not sufficiently alleged that probable cause was lacking for purposes of her state law claim. Plaintiff cannot, therefore, establish all of the elements of a Pennsylvania law malicious prosecution claim, and Defendants' Motion to Dismiss Count Three must be granted.

**D. Count Four: False Imprisonment**

In Count Four, Plaintiff alleges that, by "causing Plaintiff to be physically restrained, handcuffed, taken into police custody and charged with criminal activity, all without legal justification or cause, Defendant Reynolds caused and intended to cause Plaintiff to be

28

confined." (Compl. ¶ 55.) As a result of that conduct, "Plaintiff was in fact arrested and confined without probable cause, and without his [sic] consent and against his [sic] will."[9] (Id. ¶ 56.) Plaintiff further alleges that "Defendants, jointly and individually,[10] without legal cause or justification, used physical force, threats, and actual or apparent physical barriers to overcome Plaintiff and effect a confinement." (Id. ¶ 57.) As a result of that conduct, "Plaintiff suffered physical pain and injury; and continues to suffer emotional distress, humiliation, mental pain[,] and anguish." (Id. ¶ 58.)

"Under Pennsylvania law, a false arrest is defined as '1) an arrest made without probable cause or 2) an arrest made by a person without privilege to do so.'" Brockington v. City of Phila., 354 F. Supp. 2d 563, 572 (E.D. Pa. 2005) (quoting McGriff v. Vidovich, 699 A.2d 797, 799 n.3 (Pa. Cmwlth. Ct. 1997) (citing Pennsylvania Suggested Standard Civil Jury Instructions at 13.04)). "The 'elements of false imprisonment are (1) the detention of another person, and (2) the unlawfulness of such detention.'" Id. (quoting Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994)). "Such detention is unlawful if it is a consequence of a false arrest." Id.

"An arrest based upon probable cause would be justified, regardless of whether the individual arrested was guilty or not." Renk, 641 A.2d at 293 (citing Fagan v. Pittsburgh Terminal Coal Corp., 149 A. 159 (Pa. 1930)). "Probable cause exists when 'the facts and circumstances which are within the knowledge of the police officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of

---

[9] It is not clear why the Complaint repeatedly refers to Plaintiff as a male when she is, in fact, female.

[10] Despite Plaintiff's reference to "Defendants" who acted "jointly and individually" in Paragraph Fifty-Seven of the Complaint, according to the heading for Count Four of the Complaint this claim is only asserted against Defendant Reynolds.

reasonable caution in the belief that the suspect has committed or is committing a crime.'" Id. (quoting Commonwealth v. Rodriguez, 585 A.2d 988, 990 (Pa. 1991) (internal citation omitted)).

As discussed above, Plaintiff has not sufficiently alleged that Defendant Reynolds lacked probable cause to arrest her. Thus, any detention of Plaintiff in connection with an arrest based on probable cause does not provide the basis for a false imprisonment claim under Pennsylvania law. Because Plaintiff fails to state a claim of false imprisonment, Defendants' Motion to Dismiss Count Four is granted.[11]

## E. **Count Five: Assault and Battery**

In Count Five, Plaintiff asserts a claim for assault and battery against Defendant Reynolds pursuant to Pennsylvania law. Plaintiff alleges that "by physically restraining and handcuffing Plaintiff, and confining him [sic] in a detention cell, all without legal cause or justification, Defendant Reynolds used unreasonable force and caused and intended to cause a harmful and offensive contact with the body of Plaintiff." (Compl. ¶ 60.) Plaintiff further alleges that Defendant Reynolds caused and intended to cause Plaintiff immediate and harmful injury, and that as a direct and proximate result of that conduct, Plaintiff suffered "physical injury and pain, and continues to suffer emotional distress, humiliation, mental pain[,] and anguish." (Id. ¶¶ 61–62.)

"Under Pennsylvania law, 'assault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person.'" Glass v. City of Phila., 455 F. Supp. 2d 302, 365 (E.D. Pa. 2006) (quoting Renk, 641 A.2d at 293) (additional citations

---

[11] Defendant Reynolds argues that Plaintiff cannot present a viable claim for false imprisonment, because "the claim is based upon Plaintiff being handcuffed and temporarily detained but where Plaintiff waived the preliminary hearing and there is no allegation that she was otherwise imprisoned." (Defs.' Mem. Supp. Mot. Dismiss 8.) Because Count Four is being dismissed on other grounds, the Court does not address this argument.

omitted).  "An assault requires both the actor's intent to place the individual in imminent

apprehension of harmful or offensive contact and the individual's actual imminent

apprehension."  Id. at 365–66 (citing Restatement (Second) of Torts, § 21.)  "If there is no

assault, then there can be no claim for battery."  Id. at 366. (citing Belcher v. United States, 511

F. Supp. 476 (E.D. Pa. 1981)).

      "'A police officer may be held liable for assault and battery when [the factfinder]

determines that the force used in making an arrest is unnecessary or excessive.'"  Id. at 366

(quoting Renk, 641 A.2d at 293).  Thus, "[t]he appropriate standard for determining an officer's

potential liability for assault and battery when making an arrest is whether excessive or

unreasonable force was used in effectuating that arrest."  Id. at 366.  If there is no finding of

excessive force by officers, then there can be no claim for liability for assault and battery.  Id.

"A police officer may use reasonable force to prevent interference with the exercise of his

authority or the performance of his duty.  In making a lawful arrest, a police officer may use such

force as is necessary under the circumstances to effectuate the arrest.  The reasonableness of the

force used in making the arrest determines whether the police officer's conduct constitutes an

assault and battery."  Renk, 641 A.2d at 293.

      Defendant Reynolds urges dismissal of Plaintiff's assault and battery claim because the

assertions that she was handcuffed and otherwise detained, in the absence of a claim of excessive

force, do not state a viable cause of action for assault and battery under Pennsylvania law.

(Defs.' Mem. Supp. Mot. Dismiss 9.)  Plaintiff argues that where an arrest is unlawful, an officer

loses the privilege to use reasonable and necessary force when making an arrest which would

otherwise shield them from liability.  (Pl.'s Resp. Opp'n Mot. Dismiss 10.)  Plaintiff maintains

that, because her arrest was unlawful, Defendant Reynolds's actions "in physically removing

Plaintiff out of her car, handcuffing her, and placing her in the back of a police cruiser were unlawful and, therefore, unnecessary." (Id. at 11.)  Therefore, according to Plaintiff, "the act of being unlawfully handcuffed is the very 'body contact' that would offend a reasonable person's personal sense of dignity, thus establishing the intentional tort of battery."  (Id.)  Finally, Plaintiff argues that, under Pennsylvania law, the necessity of the amount of force used in making an arrest is a jury question, and "[t]herefore, a jury must decide . . . whether a police officer's actions in making an arrest were lawful, privileged, and protected by official immunity, or [were instead] an intentional tort and 'willful misconduct' that exposes the officer to civil liability." (Id.)

As discussed above, Plaintiff has not sufficiently alleged that Defendant Reynolds lacked probable cause to arrest her.  Thus, based on the reasons Defendant Reynolds listed in the police report that contributed to probable cause to arrest Plaintiff, as described in the Complaint, the arrest was not unlawful.  As a result, Plaintiff's argument that being handcuffed and placed into a police car was unlawful and unnecessary fails, and therefore she cannot state a claim for assault and battery against Defendant Reynolds on that basis.  Furthermore, Plaintiff has not alleged that any amount of force that Defendant Reynolds used to accomplish those actions was excessive.  Accordingly, Defendants' Motion to Dismiss Count Five is granted.

**F. Defendants' Motion to Strike**[12]

The final portion of Defendants' Motion seeks to strike multiple allegations from the Complaint, specifically Paragraphs Twenty-Six (a) through (v), as well as Paragraphs Twenty-Seven through Thirty-Two, which Defendants characterize as "scurrilous, immaterial allegations that Officer Reynolds in 21 prior criminal cases fabricated observations and evidence and

---

[12] As Plaintiff will be given leave to amend her Complaint, the Court addresses the Motion to Strike so as to indicate which allegations may not be included in any amended version of the Complaint.

engaged in illegal conduct of which his supervisors were alleged to be aware." (Defs.' Mem. Supp. Mot. Dismiss 9.)

Federal Rule of Civil Procedure 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Content is immaterial when it "has no essential or important relationship to the claim for relief." Donnelly v. Commonwealth Fin. Sys., No. Civ.A.07-1881, 2008 WL 762085, at *4 (M.D. Pa. March 20, 2008) (citing Delaware Healthcare, Inc. v. MCD Holding Co., 893 F. Supp. 1279, 1291–92 (D. Del. 1995)). Content is impertinent when it does not pertain to the issues raised in the complaint. Id. (citing Cech v. Crescent Hills Coal Co., No. Civ.A.96-2185, 2002 WL 31002883, at *28 (W.D. Pa. July 25, 2002)). Scandalous material "improperly casts a derogatory light on someone, most typically on a party to the action." Id. (citing Carone v. Whalen, 121 F.R.D. 231, 233 (M.D. Pa. 1988)).

"The standard for striking a complaint or a portion of it is strict, and 'only allegations that are so unrelated to the plaintiffs' claims as to be unworthy of any consideration should be stricken.'" Steak Umm Co., LLC v. Steak'Em Up, Inc., No. Civ.A.09-2857, 2009 WL 3540786, at *2 (E.D. Pa. Oct. 29, 2009) (citing Johnson v. Anhorn, 334 F. Supp. 2d 802, 809 (E.D. Pa. 2004)). "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." McInerney v. Moyer Lumber and Hardware, Inc., 244 F. Supp. 2d 393, 402 (E.D. Pa. 2002). Although "[a] court possesses considerable discretion in disposing of a motion to strike under Rule 12(f)," such motions are "not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case." River Road Dev. Corp. v. Carlson Corp., No. Civ.A.89-7037, 1990 WL 69085, at *3 (E.D. Pa.

May 23, 1990).  To prevail, the moving party must demonstrate that "the allegations have no

possible relation to the controversy and may cause prejudice to one of the parties, or [that] the

allegations confuse the issues."  Id. (citing 5C C. Wright & A. Miller, Federal Practice and

Procedure, § 1382, at 809–10, 815 (1969)).  Striking a pleading or a portion of a pleading "is a

drastic remedy to be resorted to only when required for the purposes of justice."  DeLa Cruz v.

Piccari Press, 521 F. Supp. 2d 424, 428 (E.D. Pa. 2007) (quotations omitted).

Defendants argue that Plaintiff has not included facts in support of the allegations in

Paragraphs Twenty-Six through Thirty-Two of the Complaint, and that in every one of the

referenced criminal cases discussed in Paragraph Twenty-Six, the disposition was either (a)

guilty after trial; (b) a guilty plea, or (c) acceptance into the accelerated rehabilitative disposition

program ("ARD program").[13]  (Defs.' Mem. Supp. Mot. Dismiss 9.)  Defendants further note

---

[13] In support of their arguments, Defendants attach the docket reports for those cases which have not been expunged.  "As a general rule, when 'matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.'"  Geraghty v. Ins. Servs. Office, Inc., 369 F. App'x 402, 407 (3d Cir. 2010).  (quoting Fed. R. Civ. P. 12(d)).  Rule 12(d), however, only applies to motions to dismiss pursuant to Rule 12(b)(6) or motions for judgment on the pleadings pursuant to Rule 12(c).  See Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").  Here, the records are being considered in connection with Defendants' Motion to Strike pursuant to Rule 12(f), and therefore Rule 12(d) does not apply.

Even if the records were being considered in connection with Defendants' Motion to Dismiss, matters of public record may be considered without converting the motion to one for summary judgment.  Id. (quoting Lum v. Bank of Am., 361 F.3d 217, 222 n.3 (3d Cir. 2004) (noting that in deciding a motion under Rule 12(b)(6), "courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim") (abrogated in part on other grounds by Twombly v. Bell Atl. Corp., 550 U.S. 544 (2007), as recognized in In re Ins. Brokerage Antitrust Litig., 618 F.3d 300 (3d Cir. 2010)); see also Miller v. Cadmus Commc'ns, No. Civ.A.09-2869, 2010 WL 762312, at *2 (E.D. Pa. Mar. 1, 2010) ("However, evidence beyond a complaint which the court may consider in deciding a 12(b)(6) motion to dismiss includes public records (*including court files, orders, records and letters of official actions or decisions of government agencies and administrative bodies*), documents essential to plaintiff's claim which are attached to defendant's

that in two of those cases, a court found that the defendants had refused blood tests and, in

ancillary driver's license suspension hearings, those same defendants were found not credible.

(Id. at 9–10.)  Defendants argue that, as a result, the majority of the criminal defendants

referenced in Plaintiff's Complaint would themselves be barred from bringing claims against the

Defendants in this case because of the United States Supreme Court's decision in Heck v.

Humphrey,[14] or would be collaterally estopped from bringing claims against the Defendants

because their testimony was found not credible in license suspension proceedings.  (Id. at 16

(citing Heck, 512 U.S. 477, 466–87 (1984)).)  According to Defendants, if this Court permits

Plaintiff to include the objected-to allegations, it would have to engage in mini-trials regarding

the other DUI cases, suggesting to a fact-finder that the state court dispositions were wrongly

decided, which would violate the principles set forth in Heck v. Humphrey.  (Id.)

Plaintiff asserts that "[t]he results of [the] underlying prosecutions [referenced in

Paragraph Twenty-Six of the Complaint] are not dispositive as to the specific observations

allegedly made by Defendant Reynolds, that is, an individual can plead guilty to DUI or be

admitted into the ARD program even though they did not actually have slurred speech, a

staggered gait, a flush face, etc.," and that criminal defendants may enter guilty pleas or enter

diversionary programs for reasons other than guilt.  (Pl.'s Resp. Opp'n Mot. Dismiss 11–12.)

---

motion, and items appearing in the record of the case.") (emphasis added) (citing Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1384, n.2 (3d Cir. 1995)).  As the referenced criminal dockets are matters of public record, this Court could also consider the facts therein without converting Defendants' Motion to Dismiss to a motion for summary judgment.

[14] In Heck v. Humphrey, the Supreme Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.  A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983."  Heck, 512 U.S. 447, 486–87 (1994) (emphasis in original).

Further, according to Plaintiff, Defendant Reynolds's affidavits in other cases "are not only relevant and material to the case against [him] to establish the boilerplate allegations made against all DUI defendants, but [they] also establish the lack of supervision and training at the Upper Providence Police Department."  (Id. at 12.)  Plaintiff argues that "[w]hile the underlying defendants in those cases are not permitted to file a civil action under § 1983 due to the disposition of their cases, Plaintiff Boseman is permitted to cite to them, especially in light of the prior complaints filed by [two of those individuals],[15] to support the Monell claim in this matter."  (Id.)  Plaintiff maintains that Defendant Reynolds "has an established pattern of using boilerplate observations to establish probable cause in what would otherwise be an unlawful arrest," which supports plausible claims that there is a custom of fabricating police reports in Upper Providence Township, as well as a failure to train, supervise, or discipline police officers, and that she should therefore be permitted to proceed through discovery on her Monell claim. (Id. at 14.)  Thus, according to Plaintiff, Defendant's Motion to Strike is premature and should instead be heard as the subject of a motion in limine.  (Id. at 12.)  Plaintiff also asserts that Defendants' "mini-trials" argument is premature because she is entitled to engage in discovery and because the determination of how any resulting relevant evidence may be used is an issue for a later day.  (Id. at 15.)  According to Plaintiff, "if one of the individuals arrested by Defendant Reynolds chose to testify that the allegations were not true, then the defense in this matter would be able to cross-examine that individual regarding the disposition of their case."  (Id. at 15.)

Even if Plaintiff's municipal liability claims against Defendant Upper Providence Township were not subject to dismissal, Paragraph Twenty-Six would still be appropriately stricken from the Complaint as immaterial.  Plaintiff's arguments for including the allegations in

---

[15] Again, the Court has chosen not to include the names of the individuals referenced in Paragraph Twenty-Six in this Memorandum.

Paragraph Twenty-Six are not persuasive in light of the legitimate concerns raised by

Defendants. Allowing Plaintiff to essentially re-litigate the merits of other individuals' criminal

trials, in which those individuals were convicted, in an effort to show that Defendant Reynolds

violated her rights in the manner alleged and that Defendant Upper Providence Township should

therefore be liable for her Monell claims, would not be appropriate in light of the principles

discussed in Heck. Plaintiff provides no legal support for her theory that she may bring a § 1983

lawsuit that, in order to succeed, would in large part require proof of the unlawfulness of

another's conviction, where the convicted individual would be prevented from doing so by the

Supreme Court's holding in Heck.[16] Accordingly, because the allegations in Paragraph Twenty-

Six are immaterial and confuse the issues in the litigation, they are stricken from the Complaint.

Similarly, the allegations in Paragraphs Twenty-Seven through Thirty-One, which rely on

records related to those individuals' convictions, are also stricken. The Court does not strike

Paragraph Thirty-Two.

### G. Leave to Amend

The United States Court of Appeals for the Third Circuit has made clear that if a

complaint is subject to Rule 12(b)(6) dismissal, a district court must ordinarily permit a curative

amendment unless such an amendment would be inequitable or futile. Alston v. Parker, 363

F.3d 229, 235 (3d Cir. 2004). Dismissal without leave to amend is justified only on grounds of

bad faith, undue delay, prejudice, and futility. Id. at 236. This opportunity to amend must be

---

[16] According to the Supreme Court's decision in Heck, the individuals Plaintiff identified in Paragraph Twenty-Six of the Complaint would not be able to bring their own civil rights claims against Defendant Reynolds, because they were convicted in their state criminal trials. See Heck, 512 U.S. at 486 ("We think the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies to § 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement, just as it has always applied to actions for malicious prosecution.").

offered, even if the plaintiff does not specifically make such a request.  Id. at 235.  Accordingly, the Court will grant Plaintiff twenty days in which to file an amended complaint properly setting forth a factual basis for her claims against Defendants.  Plaintiff's failure or inability to do so will, upon proper motion by Defendants, result in dismissal of any deficient claims with prejudice.

## IV.   CONCLUSION

In light of the foregoing, Defendants' Motion to Dismiss is granted and Plaintiff's Complaint is dismissed in its entirety.  Defendants' Motion to Strike is granted in part and denied in part.  Specifically, the allegations in Paragraph Twenty-Six, Twenty-Seven, Twenty-Eight, Twenty-Nine, Thirty, and Thirty-One are stricken from the Complaint, but the Court does not strike Paragraph Thirty-Two.

An appropriate Order follows.